ELLA WRIGHT, by Her Next Friend, LUCY WRIGHT, Appellant, v. ALVIN BOYD HOOVER and IMOGENE HOOVER, Respondents.

In the Kansas City Court of Appeals May 22, 1922.

1. **FALSE IMPRISONMENT: Arrest: Not Necessary to Show Defendants Directed Arrest Where it Appears That They Instigated it.** In actions for false improvement it is not necessary to show that defendants directed the arrest, but it is sufficient to show that they instigated it.

2. **————: Evidence: Instigation of Arrest May be Inferred From Circumstances.** It is not essential to prove by direct evidence that defendants instigated plaintiff's arrest, but the same may be inferred from circumstances.

3. **————: ————: Evidence Held Sufficient to Infer Instigation of Arrest.** In an action for false imprisonment evidence *held* sufficient to authorize jury to infer that arrest of plaintiff was instigated by defendants.

Appeal from the Circuit Court of Jackson County—*Hon. Charles R. Pence,* Judge.

REVERSED AND REMANDED.

*Milford W. Rider* and *Victor S. Weber,* for appellant.

*Milton Schwind* for respondent.

BLAND, J.—This is a suit for false imprisonment. At the close of plaintiff's evidence the court marked "given" defendants' instruction in the nature of a demurrer to the evidence, whereupon plaintiff took an involuntary non-suit with leave. Plaintiff filed a motion to set aside the non-suit which was overruled, and she has appealed.

The facts show that plaintiff was a negro girl employed as a servant in the home of the defendants, her duties being general housework, to help with the cooking and to take care of the baby. In the summer of 1919 defendants' baby was teething and to pacify him defendant Mrs. Hoover gave the baby her ring. The ring disappeared and about three weeks thereafter plaintiff while upstairs in the bathroom of defendants' residence heard Mrs. Hoover, who was in an adjoining house, telephoning to some person, whose identity is not disclosed by the evidence. She heard Mrs. Hoover say to such person, "I think Ella (plaintiff) and Cordelia know something about the ring and have two detectives come out and come to O. U. Hoover's house, right across the way." O. U. Hoover was a brother of defendant, Alvin Boyd Hoover, and the latter's house was next door to the former's. Cordelia was a negro girl working in the same neighborhood. There is no evidence as to what resulted from this conversation or whether any detective came.

Plaintiff went home and related to her mother the conversation she had overheard and her mother refused to permit her to return to work. Some time afterwards defendant, Mr. Hoover, called up plaintiff's mother and asked her to come to his house and bring plaintiff. The mother came bringing plaintiff and Cordelia with her. An interview was had at defendants' house. Defendant Hoover discussed the loss of the ring and stated to the three negro women that "he didn't know who had the ring but he said whoever had the ring he was going to have them prosecuted to the full extent of the law."

"He said that ring lay between his wife and his brother-in-law and Ella," and he said that "I don't want to say my brother-in-law took it because he has more money than I have got." At this conversation Mrs. Hoover said, "that she didn't know anything about the ring." The interview ended up by Hoover stating that "he was going to turn it over to the hands of the law;" that "there wasn't but one thing to do and that was to turn it into the hands of the law." During the conversation Hoover stated that if the ring was found that plaintiff could come back to work.

The next day about 2:00 p. m. police officers of the Kansas City Police Department, came to plaintiff's house and without a warrant arrested her and her uncle and then arrested Cordelia, taking them in a patrol wagon to the police station where they were detained for some time, being questioned in regard to the loss of the ring, when they were released.

Plaintiff insists that the court erred in sustaining the demurrer to the evidence and we think the point to be well taken. In cases of this kind it is not necessary to shows that the defendants directed the arrest but it is sufficient to show that they instigated it. [McAleer v. Good, 216 Pa. State, 473; Johnson v. Norfolk & Western Ry. Co., 97 S. E. 189, 192 (W. Va.).] And it is not essential to prove this fact by direct evidence but it may be inferred from circumstances. [Milton v. Dairy Co., 188 Mo. App. 278, 285; Grimes v. Greenblatt, 47 Colo. 495.]

The evidence shows that at the interview at defendants' house defendant Hoover stated that the ring had been taken by either one of three persons, his wife, his brother-in-law, or the plaintiff, and he told plaintiff if the ring was returned she would be given back her position. The ring belonged to the wife. Mrs. Hoover denied knowing where the ring was. It will be noted that the ring belonged to the wife and she could hardly steal her own ring. The jury could well say that in view of the circumstances that said defendant was not accusing his wife of taking the ring, and the fact that he said, "I

don't want to say my brother-in-law took it because he has more money than I have got,'' tends to show that he was not accusing his brother. They could well find that Hoover was using this indirect method of accusing plaintiff, hoping to get her to return the ring and promising her to restore her to her position if she did so. When he found that he was not going to get the ring from plaintiff he said, ''there was but one thing to do and that was to turn it into the hands of the law.'' The next day the police officers came to plaintiff's house and arrested her. Hoover said that he was going to have the guilty party ''prosecuted to the full extent of the law.'' The jury could find from all the evidence that he meant plaintiff when he said this. Naturally, the first step in the prosecution would be to obtain plaintiff's arrest.

We think under this evidence the jury as reasonable men would infer that the arrest was instigated by the defendants.

The judgment will be reversed and the cause remanded and it is so ordered. All concur.