DECISION
Before the Court is Elizabeth Houghton and Maria Mendez's ("Plaintiffs") complaint seeking declaratory and injunctive relief. At issue is the Plaintiffs' eligibility for an extension of public assistance benefits by reason of hardship. The Defendant, Department of Human Services ("DHS"), denied benefits to the Plaintiffs on the grounds that DHS rules limit such hardship benefits to no more than twelve (12) months. Plaintiffs seek a declaration that the rule capping hardship benefits at twelve months is invalid for DHS' lack of statutory authorization, the arbitrary and capricious nature of the rule, and the rule's inconsistency with the purposes of the statute providing for hardship benefit extensions. Additionally, Plaintiffs seek a permanent injunction enjoining DHS from imposing a time limit on hardship extension benefits. Jurisdiction is pursuant to G.L. 1956 §§ 9-30-1, 42-35-7, and 8-2-13.
 I Facts and Travel
The R.I. Works Program, established by Chapter 5.2 of Title 40, Rhode Island General Laws, provides cash assistance for eligible families with children while requiring *Page 2 
entry or re-entry of adult family members into the workplace. G.L. 1956 § 40-5.2-3. The program is funded by the federal government through a Temporary Assistance for Needy Families (TANF) block grant. See 42 U.S.C. § 601 et seq.
Federal law generally prohibits states from utilizing grant money to provide assistance to adult recipients for more than sixty months.See 42 U.S.C. § 608(a)(7)(A) (asserting that a State to which a grant is made shall not use any part of the grant to provide assistance to a family that includes an adult who has received assistance for more than sixty consecutive or non-consecutive months). However, the statute expressly permits a state to exempt families from the sixty-month limitation "by reason of hardship." 42 U.S.C. § 608 (a)(7)(C).
The Rhode Island General Assembly, in establishing the R.I. Works Program, incorporated the federally specified sixty-month eligibility time limit and, as authorized by federal law, adopted a provision permitting DHS to exempt families from the sixty-month time limit "by reason of hardship." G.L. 1956 § 40-5.2-10(j). DHS duly promulgated regulations establishing the criteria for extending benefits on hardship grounds. DHS Manual § 1406.50.10. The regulations include a provision limiting such extensions to twelve months in total. DHS Manual § 1406.50.10.05 (Agreed Statement of Facts, Ex. 2).
The material facts and regulations at the center of this dispute are undisputed. Plaintiffs, both suffering from documented disabilities, received hardship benefits for a period of twelve months. Given their disabilities, both satisfied the hardship criteria enumerated by DHS Manual § 1406.50.10. After receiving twelve months of hardship benefits, Plaintiffs reapplied for hardship benefits on the grounds of their documented *Page 3 
disabilities. Both were refused further benefits for the sole reason that DHS regulations cap such benefits at twelve months.
Plaintiffs assert that the DHS rule imposing a time limit on hardship benefits is unauthorized by state statute and thus in excess of statutory authority. DHS argues that pursuant to G.L. 1956 § 40-5.2-10(j), it not only has the authority to determine eligibility for hardship benefits but also the discretion to establish time limits. DHS points to G.L. 1956 §§ 40-5.2-27 and 40-5.2-28, which grant DHS the authority to promulgate rules and regulations necessary to implement the R.I. Works Program. Accordingly, DHS contends that its imposition of time limits are well within the scope of its authority as delegated by the Rhode Island General Assembly.
On October 13, 2010, this Court issued a Temporary Restraining Order, which restrained DHS from denying hardship benefits to Plaintiffs based on DHS' rule limiting such benefits to twelve months. The parties subsequently submitted an Agreed Statement of Facts and the hearing on the merits was advanced pursuant to Super. R. Civ. P. 65.
 II Standard of Review
Under the Uniform Declaratory Judgment Act (UDJA), the Superior Court possesses "the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." G.L. 1956 § 9-30-1; see also P.J.C. Realty v.Barry, 811 A.2d 1202, 1207 (R.I. 2002) (quoting § 9-30-1). The Court's power under the UDJA is broadly construed, and allows the trial justice to "facilitate the termination of controversies[.]"Malachowski v. State, 877 A.2d 649, 656 (R.I. 2005). Further, it is well-established that a trial court's "decision to grant or deny declaratory relief under the [UDJA] is purely discretionary."Sullivan v. Chafee, 703 A.2d 748, 751 (R.I. 1997). *Page 4 
According to G.L. 1956 § 42-35-7 (Declaratory judgment on validity or applicability of rules):
 "[t]he validity or applicability of any rule may be determined in an action for declaratory judgment in the superior court of Providence County, when it is alleged that the rule, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff. The agency shall be made a party to the action. A declaratory judgment may be rendered whether or not the plaintiff has requested the agency to pass upon the validity or applicability of the rule in question."
A party seeking injunctive relief must demonstrate (1) a reasonable likelihood of success on the merits; (2) a threat of irreparable harm that is presently threatened or imminent and for which there is no adequate remedy of law; and (3) a balancing of the equities that favors the moving party. Fund for Cmty. Progress v. United Wayof Se. New England, 695 A.2d 517, 521-22 (R.I. 1997); Iggy'sDoughboys, Inc. v. Giroux, 729 A.2d 701, 705 (R.I. 1999).
Further, in addressing a request for a permanent injunction, the Court must determine whether "the merits of the case call for an order forbidding or compelling particular conduct." See Robert B.Kent et al., Rhode Island Civil and Appellate Procedure § 65:1 (West 2006). The issuance of an injunction and the scope of the relief granted rests in the Court's discretion.DeNucci v. Pezza, 114 R.I. 123, 130, 329 A.2d 807, 811 (1974).
 III Analysis
The issue before this Court rests upon a determination of whether DHS' decision to impose a time limit of twelve months for hardship benefits was expressly authorized by statute. It is well-settled that "[q]uestions of law and statutory . . . interpretation are reviewedde novo by this Court." State v. Briggs,934 A.2d 811, 814 (R.I. 2007) (quoting *Page 5 Rhode Island Depositors Economic Protection Corp. v. Bowen CourtAssociates, 763 A.2d 1005, 1007 (R.I. 2001)). Accordingly, "when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." Briggs, 934 A.2d at 814.
When a statute is ambiguous, courts should defer to the agency's legal interpretation. Labor Ready Northeast, Inc. v. McConaghy,849 A.2d 340, 345-46 (R.I. 2004) (citing Barnhart v. Thomas,540 U.S. 20, 157 L.Ed.2d 333, 124 S.Ct. 376, 380 (2003);Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,467 U.S. 837, 843, 81 L.Ed.2d 694, 104 S.Ct. 2778 (1984)). If the General Assembly does not define a term in a statute, and more than one reasonable interpretation of the term exists, the court should conclude that the term is ambiguous. Labor Ready, 849 A.2d at 345-46. When "the provisions of a statute are unclear or subject to more than one reasonable interpretation, the construction given by the agency charged with its enforcement is entitled to weight and deference as long as that construction is not clearly erroneous or unauthorized."Gallison v. Bristol School Committee,493 A.2d 164, 166 (R.I. 1985).
In the instant case, the parties offer differing interpretations of the hardship exceptions provision of the statute establishing the R.I. Works program. According to G.L. 1956 § 40-5.2-10(j)(1) (Hardship Exceptions):
 "The department may extend an assistance unit's or family's cash assistance beyond the time limit, by reason of hardship; provided, however, that the number of such families to be exempted by the department with respect to their time limit under this subsection shall not exceed twenty percent (20%) of the average monthly number of families to which assistance is provided for under this chapter in a fiscal year; provided, however, that to the extent now or hereafter permitted by federal law, any waiver granted under § 40-5.2-35, for domestic violence, shall not be counted in determining the twenty percent (20%) maximum under this section." (Emphasis added.) *Page 6 
Plaintiffs argue the statutory language "the department may extend . . ." requires DHS to grant hardship extensions (so long as the number of families does not exceed 20% of the average monthly number of families receiving assistance under § 40-5.2) and does not delegate to DHS the authority to impose time limits. In the alternative, DHS contends that the language "may extend" expresses a discretionary — not mandatory — duty to extend benefits which authorizes DHS to establish a time limit on hardship extensions.
The Court finds DHS' interpretation to be erroneous and unauthorized, and, therefore, neither entitled to great weight nor deference.Gallison, 493 A2d at 166. It is axiomatic that agencies must have "specific statutory authority for the regulations they promulgate."Berkshire Cablevision of Rhode Island v. Burke,488 A.2d 676, 679 (R.I. 1985) (citing Little v. Conflict of InterestCommission, 397 A.2d 884, 886 (R.I. 1979)). There is nothing in the R.I. Works Statute, 40-5.2-1 et seq., expressly or implicitly authorizing DHS to establish, by rule, a twelve month cap on hardship extensions. Implicit in DHS' argument is the unacceptable suggestion that the Legislature intended DHS to have virtually unconstrained discretion to engraft conditions and/or limitations on the right to hardship benefit extensions. It is well-settled that the use of the word "may" simply "confers a power or capacity to do [an] act . . ."and does not "imply an option to abstain from doing the act." Nolan v. Counselof City of Newport, 57 A.2d 730, 733-734 (R.I. 1948). Whether "may" is construed as "shall" depends on "the intent of the legislature to be ascertained from the context and design of the statute." Id.
Clearly, in the `context' of § 40-5.2-10(j), the words "may extend" amount to a mandate that an applicant family be granted an extension should the family's circumstances qualify as a hardship. *Page 7 
Notably, the Legislature, despite specifying time limits on the duration of benefits in other places in the R.I. Works Statute, specified no time limit whatsoever on benefit extensions granted on grounds of hardship. See G.L. 1956 § 40-5.2-10(h)(1) and (i). Also of note is that the Legislature did limit the number of families receiving extended benefits at a given time to 20% of the average monthly caseload. G.L. 1956 § 40-5.2-10(j)(1). Accordingly, a reading of the plain language of the statute in question leads this Court to conclude that the legislative omission of a time limit on hardship extensions was purposeful and that the Legislature intended that the authority to grant hardship extensions be limited solely by the number of families receiving those benefits at a given time.
Moreover, whether or not to cap the length of hardship extensions is, like the decision to limit the number of families eligible therefore, a policy determination within the province of the Legislature. Legislative power may be delegated to administrative agencies provided that discretionary powers are "transferred in expressly defined channels." Opinion to the Governor, 308 A.2d 809, 812 (R.I. 1973);see also Opinion to the Governor, 324 A.2d 641 (R.I. 1974). An unrestricted delegation of legislative power by the General Assembly is forbidden by the Rhode Island Constitution. Marran v. Baird,635 A.2d 1174, 1179 (R.I. 1994) (citing Milardo v. Coastal ResourcesManagement Council of Rhode Island, 434 A.2d 266, 270 (R.I. 1981)). Although the General Assembly "can engage the expertise and assistance of administrative agents to effectuate the beneficial purpose of legislation," such delegation must be reasonable. Marran, 635 A.2d at 1179. "A delegation is reasonable, and thus constitutional, `[a]s long as the Legislature that creates the agency demonstrates standards or principles to *Page 8 
confine and guide the agency's power.'" Marran, 635 A.2d 1179 (quoting Davis v. Wood,427 A.2d 332, 336 (R.I. 1981)).
As indicated above, DHS' reading of § 40-5.2-10(j) would, in essence, grant the agency carte blanche to enact whatever rules regarding time limits it deems necessary, with no legislative guidelines to confine and guide DHS' power to implement such restrictions. To construe § 40-5.2-10(j) as suggested by DHS would amount to an invalid delegation of legislative authority. Elementary rules of statutory construction require that, where possible, a statute be construed so as to preserve its validity. SeeRust v. Sullivan, 500 U.S. 173, 111 S.Ct. 1759, 1771 (1991). It is in this light that the Court refuses to adopt the construction of § 40-5.2-10(j) proffered by DHS.
 IV Conclusion
For the reasons set forth above, the Court holds that the DHS rule in question, to the extent that it caps hardship benefit extensions at twelve months, lacks legislative authorization and, therefore, is invalid and unenforceable. DHS is enjoined from applying the 12 month cap rule in determining Plaintiffs' eligibility for hardship benefits.
Counsel may present an appropriate order and judgment for entry.